IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| MAURICE CARTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:19-CV-298 (MTT) |
| ) | |
| WARDEN WHITE, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### ORDER

United States Magistrate Judge Charles H. Weigle recommends granting in part and denying in part the defendants' motion for summary judgment. Doc. 47. Both parties have objected, so pursuant to 28 U.S.C. § 636(b)(1), the Court reviews de novo the portions of the Recommendation to which the parties object. Docs. 50; 53; 54. Defendants Fort and White object to the Magistrate Judge's recommendation that summary judgment be denied as to Carter's failure to protect claims. Doc. 50 at 4-5. Fort and White also assert that qualified immunity bars Carter's claims. *Id*. at 5-6. Carter objects to the recommendation that summary judgment be granted concerning his failure to intervene claims against Defendants Sanders and Jackson and his failure to protect claims against Sanders. Doc. 53 at 3.

### I. BACKGROUND[1]

On October 10, 2018, Plaintiff Maurice Carter, then a Washington State Prison inmate, told Sanders that headphones were missing from his cell. Docs. 1-1 at 2; 40-8 at 40:5-41:18. That same day, an inmate named Terrell attempted to sell Carter headphones, which Carter believed were the headphones taken from his cell. Docs. 1-

---
[1] Only facts necessary to explain the Court's ruling are stated. Of course, the facts are viewed in a light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014).

1 at 2; 40-8 at 40:5-41:18.  Carter and Terrell then had a "heated argument that [led] to Inmate Terrell threatening [Carter]."  Docs. 1-1 at 2; 40-8 at 42:11-43:21.

On the morning of October 11, Carter learned that Terrell had asked other inmates for a "shank."  Docs. 1-1 at 3; 40-8 at 43:18-44:5.  Carter told Sanders about Terrell's search for a weapon, but Sanders replied, "[d]on't worry about [Terrell], [h]e's all mouth."  Docs. 1-1 at 3; 40-8 at 43:18-44:5.  Less than an hour later, Terrell stabbed Carter in his chest and left arm.  Docs. 1-1 at 3; 40-8 at 44:5-17.  Carter then ran to the control booth and banged on the window for assistance.  Docs. 1-1 at 3; 40-8 at 44:18-46:9.  Sanders and Jackson were in the control booth at the time changing shifts.  Docs. 1-1 at 3; 40-8 at 44:18-46:9.  As Carter begged for help, Terrell again stabbed Carter, this time in the face.  Docs. 1-1 at 3; 40-8 at 44:18-46:9.  After retreating to safety, Carter was taken to the hospital, and upon his return to Washington State Prison, Carter was placed in the segregation unit where Terrell also had been moved after the attack.  Docs. 1-1 at 4; 40-8 at 48:15-25, 56:3-17.  While in segregation, Terrell "yelled out threat[s] to [Carter]." Docs. 1-1 at 4; 40-8 at 58:15-60:12.

Nearly one month after the attack, Carter was informed that he would be returned to the general population unit.  Docs. 1-1 at 4; 40-8 at 58:15-60:12.  Carter refused and told Fort and White about Terrell's continued threats, including Terrell's statement that "he [would] be waiting" after Carter's release from segregation.  Docs. 1-1 at 4; 40-8 at 58:15-60:12.  Carter was then told that he could not refuse a housing assignment, and that Carter would be placed on the opposite side of the general population unit from Terrell.  Docs. 1-1 at 4; 40-8 at 48:15-25, 58:15-60:12.

Shortly after his return to the general population unit, Carter reported to Deputy Warden Fort and Warden White that Terrell made his way to Carter's side of general

-2-

population, and that Carter was "in fear [for] his life."  Doc. 1-1 at 4; 40-8 at 48:15-50:5.  On December 2, 2018, Terrell again attempted to stab Carter, but Carter was able to get away.  Doc. 40-8 at 57:3-13.  Four days later, Carter was transferred to Central State Prison.  Doc. 1-1 at 4.

## II.  DISCUSSION

### A. Fort and White's Objection

Fort and White object to the recommendation that Carter's failure to protect claim against them proceed to trial.  *See generally* Doc. 50.  First, the defendants argue that Fort and White "were not subjectively aware of the risk to [Carter]."  *Id*. at 4 (citing *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1028 (11th Cir. 2001)).  Second, the defendants assert that "there is an absence of evidence that Defendants White and Fort failed to reasonably respond to the perceived threat."  *Id*. (citation omitted).  Finally, the defendants contend that qualified immunity bars Carter's claims against Fort and White because "[c]learly established law did not prohibit the conduct of Defendants White and Fort at the time of the incidents[.]"  *Id*. at 5.

Despite Carter's professed fear of a second attack by Terrell, Fort and White argue they were not subjectively aware of the risk because Carter did not request protective custody or document his safety concerns.  *Id*. at 4.  But that argument fails.  In a failure to protect claim, the Eleventh Circuit has held that "the defendant 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099-1100 (11th Cir. 2014) (citations omitted); *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  "Whether a prison official had the requisite knowledge of a substantial risk is a *question of fact* subject to demonstration in

the usual ways, including inference from circumstantial evidence." *Caldwell*, 748 F.3d at 1100 (citations omitted).

First, according to their affidavits, Fort and White knew about Carter's October 11, 2018 attack.  Docs. 40-5 ¶ 2; 40-6 ¶ 2.  Second, Carter testified that while he and Terrell were in segregation after the October 11 attack, he told Fort and White that Terrell leveled "all kind[s] of threats" at him.  Doc. 40-8 at 58:19-60:12.  Every time Terrell passed Carter's cell, Terrell hollered "that he was going to get [Carter]."  Doc. 40-8 at 59:2-11.  And Carter testified that when he passed Terrell's cell, Terrell would "holler … that he was going to get [Carter]."  *Id*. at 59:14-15.  Carter told Fort and White "all about that."  *Id*. at 59:16-19.  Carter said that because of Terrell's threats, he "[did not] want to come out segregation."  *Id*. at 59:20-21.  Then, after Carter was moved to general population, Terrell came to Carter's side of the prison and continued his threatening behavior.  *Id*. at 48:15-50:5.  Carter "kept telling warden and all of them, that I kept seeing [Terrell] on the same side of the institution that [Carter] was on."  *Id*. at 49:16-19.  These facts are more than enough to create a genuine issue of material fact as to whether Fort and White had subjective knowledge of the risks Terrell posed to Carter's safety.

Regarding Fort and White's response to Carter's concerns, they raise a formalistic, and arguably misleading, argument.  They argue that Carter never put his fears in "writing," and that "it is undisputed that [Carter] never requested protective custody."  Doc. 50 at 4.  Had Carter requested protective custody, the defendants assert that "[Carter] would have remained in segregation until the threat had been fully investigated and resolved."  *Id*.  This argument is easily turned against Fort and White.  Their point seems to be that because Carter did not put in writing the magic words, "I

want protective custody," they had no obligation to protect Carter.  Carter told Fort and White about Terrell's repeated threats and that he wanted the protection of remaining in segregation.  Doc. 40-8 at 58:19-60:12.  Carter could not have more clear—he wanted Fort and White to protect him Terrell.  Based on that, as Fort and White admit, Carter should have been protected "until the threat had been fully investigated and resolved."  Doc. 50 at 4.

Fort and White then raise another argument that hurts more than it helps.  They contend that after his release from segregation, Carter was "housed in the opposite end of the prison from Terrell and was scheduled for a transfer to another prison."  *Id*.  According to the defendants, "[a]t a minimum, the undisputed evidence … collectively demonstrates that Defendants White and Fort exhibited at most negligence, which is not actionable under the Eighth Amendment."  *Id*. at 5.  Thus, Fort and White effectively admit their subjective awareness of the harm Carter faced in general population.  Their half measures cannot be squared with their admission that protective custody is the appropriate response to such threats.  Moreover, their half measures were not even that.  Again, Carter told Fort and White that Terrell crossed to Carter's side of the prison and continued to threaten him.  Doc. 40-8 at 48:15-50:5.  As Carter testified, being housed on opposite ends of general population was insufficient because "everybody goes from one side to the other."  *Id*. at 48:24-25.  And then, of course, Terrell attacked Carter a second time on December 2, 2018.  Docs. 1-1 at 4-5; 40-8 at 56:23-57:25.  These facts are clearly sufficient to create a jury question as to the reasonableness of Fort and White's response to Carter's safety concerns.

Finally, the defendants argue that *Caldwell v. Warden, FCI Talladega* cannot be used as clearly established law to impose liability because the facts in *Caldwell* are

significantly different from the facts at issue in this case.[2]  Doc. 50 at 5-6.  The defendants argue that unlike the officials in *Caldwell*, Fort and White reasonably responded to Carter's concerns by housing him on the opposite end of general population away from Terrell while a transfer was pending for either Terrell or Carter.  *Id*. at 6.  Moreover, the defendants contend that unlike the officials in *Caldwell*, Fort and White did not place Carter in the same cell as Terrell after the first assault.  *Id*. at 5-6.  These are distinctions without a difference.  A jury could reasonably find that Fort and White, knowing of Terrell's prior vicious attack and his continued threats and notwithstanding Carter's plea to be kept in segregation, returned Carter to general population where they knew Terrell could easily follow through with his threat to attack Carter again.  *Caldwell* clearly established Carter's right to be protected from this known risk of assault.  *Caldwell*, 748 F.3d at 1102-03.

Accordingly, the recommendation that summary judgment be denied as to Carter's failure to protect claims against Fort and White is **ADOPTED.**

**B. Carter's Objection**

Carter objects to the recommendation that summary judgment be granted as to his failure to protect claims against Sanders and failure to intervene claims against Sanders and Jackson.  *See generally* Doc. 53.  After a de novo review of Carter's objections, the recommendation that summary judgment be granted as to Carter's failure to protect claims against Sanders and his failure to intervene claims against Sanders and Jackson is **ADOPTED**.

Despite Terrell's brutal attack in Sanders and Jackson's presence, this is not inconsistent with the Court's ruling that Carter's claims against Fort and White will go

---

[2] Fort and White were acting within their discretionary authority.  Thus, Carter bears the burden of establishing the violation of a clearly established right.  *Hall v. Flournoy*, 975 F.3d 1269, 1275 (11th Cir. 2020); *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019).

forward.  No clearly established law put Sanders on notice that Carter's dispute with Terrell required that Carter be placed in protective custody.  Similarly, "[n]o caselaw clearly establishes that prison officials must immediately, physically intervene in inmate-on-inmate altercations notwithstanding deficits in training and manpower, and unpublished Eleventh Circuit authority indicates that the Eighth Amendment does not make this demand … of prison officials.  *See Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005).  Therefore, … Sanders and Jackson are entitled to summary judgment both on the merits, and on the alternative basis of qualified immunity."  Doc. 47 at 9.

### C. Available Remedies

In his complaint, Carter requests injunctive relief and compensatory and punitive damages.  Doc. 1-1 at 5-6.  The Magistrate Judge determined that Carter's injunction request is moot because his concern about being transferred back to Washington State Prison is speculative.  Doc. 47 at 11.  Regarding damages, the Magistrate Judge determined that should Carter prevail at trial, he is only entitled to nominal damages.  *Id*.

Carter's request for injunctive relief is, in fact, moot.  Carter was transferred to Central State Prison on December 6, 2018, and there is nothing in the record to substantiate his concern about being transferred back to Washington State Prison.  Doc. 1-1 at 4-6.  However, concerning damages, the Eleventh Circuit recently held that 42 U.S.C. § 1997e(e) does not preclude a plaintiff from recovering punitive damages in the absence of a physical injury.  *Hoever v. Marks*, 993 F.3d 1353, 1357-62 (11th Cir. 2021).  Still, because Carter has not shown any physical injuries as to his claims against Fort and White, he is not entitled to compensatory damages.  *See Brooks v. Warden*, 800 F.3d 1295, 1307-09 (11th Cir. 2015).

Accordingly, the defendants are entitled to summary judgment as to Carter's claim for injunctive relief and his request for damages in the defendants' official capacity. Should Carter prevail at trial on his failure to protect claims against Fort and White, he may be awarded nominal and punitive damages.

### III. CONCLUSION

For the reasons discussed above, the recommendation that the defendants' motion for summary judgment be granted with respect to Carter's failure to protect claim against Sanders is **ADOPTED**. The recommendation that the defendants' motion for summary judgment be granted with respect to Carter's failure to intervene claim against Sanders and Jackson is **ADOPTED**. The recommendation that the defendants' motion for summary judgment be denied with respect to Carter's failure to protect against Fort and White is **ADOPTED**. Accordingly, the defendants' motion for summary judgment (Doc. 40) is **GRANTED** in part and **DENIED** in part. This case shall proceed to trial for the resolution of Carter's remaining failure to protect claim against Fort and White.

**SO ORDERED**, this 22nd day of September, 2021.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT